Humberto M. Guizar, Esq.,
(SBN: 125769)
Christian Contreras, Esq.,
(SBN: 330269)
**GUIZAR, HENDERSON &**
**CARRAZCO, LLP**
Justice X Building
3500 W. Beverly Blvd.
Montebello, CA 90640
Telephone: (323) 725-1151
Facsimile: (323) 597-0101

Austin R. Dove, Esq., (SBN: 180321)
**DOVE LAW CORP.**
Justice X Building
3500 W. Beverly Blvd.
Montebello, CA 90640
Telephone: (213) 487-8300

Stephen A. King Esq., (SBN: 224683)
**KINGS JUSTICE, LLC**
Justice X Building
3500 W. Beverly Blvd.
Montebello, CA 90640
Telephone: (323) 546-4529

Attorneys for Plaintiffs
SARA OCHOA, BRANDEN COSTA, JAJUAN JOHNSON, ANTONIO MAY,
and MICHAEL PERR individually and on behalf of a class of similarly situated
persons,

# UNITED STATED DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA OCHOA, BRANDEN COSTA, JAJUAN JOHNSON, ANTONIO MAY, and MICHAEL PERR, individually and on behalf of a class of similarly situated persons,<br><br>           Plaintiffs,<br><br>      v.<br><br>CITY OF LOS ANGELES, a legal subdivision of the State of California; CHIEF MICHEL MOORE; and DOES 1 through 10, inclusive,<br><br>           Defendants. | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. Fourth Amendment Violations (42 U.S.C. § 1983);<br>2. Fourteenth Amendment - Substantive Due Process (42 U.S.C. § 1983);<br>3. First Amendment Violations (42 U.S.C. § 1983)<br>4. Municipal Liability (*Monell*) (42 U.S.C. § 1983)<br><br>**DEMAND FOR JURY TRIAL** |

1

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

## COMPLAINT FOR DAMAGES

1. Public trust is the bedrock of community policing. The allegations of this Complaint speak to the very core of that foundation. This action stems from the misclassification of hundreds, if not thousands of City of Los Angeles residents as gang members by at least twenty-seven (27) Los Angeles Police Department (hereinafter "LAPD") officers, including Braxton Shaw, Michael Coblentz, and Nicholas Martinez, who have been charged with fifty-nine (59) criminal counts.

2. Los Angeles Police Department officers routinely falsified field interview (hereinafter "FI") cards by classifying people who are not gang members, as gang members or gang associates. LAPD and its officers further violated public trust and numerous laws by entering false descriptions of innocent civilians as gang members into an official state-wide database. In many instances LAPD officers falsely stated in official records that the individuals had "self-admitted" gang affiliation when no such admissions had occurred. This resulted in devastating consequences to putative class members, almost all of whom were Black and Latino, including imprisonment, deprivation of civil rights, and practical consequences such as not being able to obtain a job, rent an apartment, or receive financial aid for college.

3. As an example, class member, Sara Ochoa is a young Latina woman who grew up in East Los Angeles and made it out of the low income neighborhood to become a correctional officers of the State of California. Ms. Ochoa served as a public servant for the State of California up until she became a victim of LAPD Officers on January 18, 2020 when Ms. Ochoa was misclassified as a "gang associate" simply for going back to visit the neighborhood she grew up in. Unfortunately, not only was Ms. Ochoa misclassified as a "gang associate," Ms. Ochoa was subjected to an unreasonable detention by being handcuffed on the street in public display for approximately twenty (20) minutes while her vehicle and belongings in her vehicle were ransacked by LAPD officers.

4.      Another putative class member is Jajuan Johnson. Mr. Johnson recently graduated from high school in south Los Angeles. Notably, he scored sixty-two (62) points in a varsity basketball game during his 2018 senior year. He is soft-spoken and has no criminal record. On January 13, 2019, Johnson was a passenger in a car being driven in Los Angeles when LAPD officers pulled over the vehicle, ostensibly for tinted windows. Officers came up with a reason to search the car. LAPD officers then blatantly lied in the police report they authored by contending that Mr. Johnson, a college student, Jamba Juice employee and aspiring writer was a member of a Blood street gang. The LAPD officers reasoned that because Mr. Johnson's cousin was an alleged gang member, he too must be gang affiliated. As a result, Mr. Johnson is currently being prosecuted by the Los Angeles City Attorney's Office pursuant to a fabricated gang allegation under Penal Code Section 186.22. Mr. Johnson consistently denied any gang membership to no avail. Because of the LAPD's false claims against him, Mr. Johnson has suffered the loss of employment, damage to his reputation and severe depression. If convicted, Mr. Johnson will be required to register as a gang member.

5.      Branden Costa, a young Black man, had just graduated from a Palisades area high school and was a Division 1 prospect athlete. One afternoon he was returning home from visiting a friend at the California Hospital in Downtown Los Angeles. That day a shooting occurred at a park a short distance from Mr. Costa's home. Time-verified security footage from the hospital showed Mr. Costa exiting the lobby ten minutes before the shooting. The shooting location, however, was a twenty-minute commute from the hospital. Nonetheless, LAPD officers falsely accused Mr. Costa of being the shooter. In an effort to unlawfully convict Mr. Costa, LAPD officers prepared and submitted false police reports claiming Mr. Costa was a gang member, even though LAPD officers had no credible evidence to support this claim. Mr. Costa expressly told LAPD officers he was not a gang member. Although Mr. Costa was acquitted of all charges, the falsely contrived gang identification followed

him and has plagued his life every day since, causing him incalculable suffering and damage.

## JURISDICTION AND VENUE

6.     This action is properly filed in the Central District of the United States District Court for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth and Fourteenth Amendment of the United States Constitution, and the California Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

7.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, as all Defendants and events giving rise to the claims herein occurred in the Central District of California.

## PARTIES

8.     At all relevant times, SARA OCHOA is an individual residing in the County of Los Angeles, California.

9.     At all relevant times, BRANDEN COSTA is an individual residing in the County of Los Angeles, California.

10.     At all relevant times, JAJUAN JOHNSON is an individual residing in the County of Los Angeles, California.

11.     At all relevant times, ANTONIO MAY is an individual residing in the County of Los Angeles, California.

12.     At all relevant times, MICHAEL PERRY is an individual residing in the County of Los Angeles, California.

13.     The Plaintiff classes consist of: 1) approximately one thousand (1,000) individuals, if not more, who were subjected to misclassification as gang members in Los Angeles City reports; 2) approximately five hundred (500) individuals, if not more, who were made part of a gang database; and 3) approximately five thousand (5,000) individuals who were misclassified as gang associated.

///

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

14. Defendant City of Los Angeles is a municipal corporation duly organized and existing under the Constitution and laws of the State of California. The Los Angeles Police Department is a local government entity and an agency of Defendant City of Los Angeles, and all actions of the LAPD are the legal responsibility of the City of Los Angeles. The City of Los Angeles is sued in its own right on the basis of its policies, customs, and practices which gave rise to Plaintiffs' federal rights claims.

15. Defendant Chief Michel Moore is and was, at all times relevant to this action, the LAPD Chief of Police and a policymaker for his department. He is sued in both his individual and official capacities.

16. Plaintiffs are informed, believe, and thereupon allege that Does 1 through 10 were the agents, servants, and employees of Defendants City of Los Angeles and/or the LAPD. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendant by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. The individual Doe Defendants are sued in both their individual and official capacities.

17. Plaintiffs are informed, believe, and thereupon allege at all times relevant, Does 1 through 10, in addition to the named Defendants, are responsible in some manner for the damages and injuries alleged herein.

18. Plaintiffs are informed, believe, and thereupon allege that at all times relevant, Defendants, and each of them, were the agents, servants and employees of the other Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer. At all times Defendants were acting under color of state law.

19. Plaintiffs are informed, believe, and thereupon allege that the practices, policies, and customs of the City of Los Angeles and/or the LAPD caused the unlawful action taken against Plaintiffs.

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

1

**FACTUAL ALLEGATIONS**

2      20.     The City of Los Angeles Police Department has manipulated the law to

3   criminalize innocent people. Specifically, California Penal Code Section 186.22 is a

4   statute that gives police officers broad discretion to arrest individuals on the premise

5   that the person committed a crime for the benefit, at the direction and in association

6   with a criminal street gang. LAPD officers, since the inception of the statute, created

7   a unwritten custom and practice of using CPC 186.22 to criminalize innocent people

8   and classify them as gang members.

9      21.     In many cases, LAPD officers falsely incriminated members of this

10   class by applying gang enhancements to simple offenses like marijuana possession

11   or receiving stolen property. This practice exposed these criminal defendants to

12   extremely harsh sentences. With exposure to aeonic terms of imprisonment, many

13   individuals accepted plea deals to lesser offenses to avoid being locked up for

14   decades. Others, who had the audacity to insist on their innocence, were found guilty

15   by juries based on perjurious LAPD officers' testimony, then sentenced to many

16   years including, in numerous instances, life in prison. Those same individuals have

17   been forced to register annually as gang members at the very police stations where

18   they were framed in the first place.

19      22.     In June of 2020, the California Department of Justice department

20   announced it suspended the use of CalGangs, citing questions about its accuracy and

21   the desire to "avoid any adverse impact on individuals, particularly in communities

22   of color." CalGangs is used by law enforcement agencies across the state of

23   California to store names and personal details of nearly eighty thousand (80,000)

24   people suspected of being active gang members or possibly associating with them

25   but has long been controversial.

26      23.     LAPD records account for about 25% of all CalGangs entries.

27      24.     On July 14, 2020, the California Department of Justice revoked LAPD's

28   access to the California statewide CalGangs database. In 2016, a state audit found

that CalGangs was riddled with questionable entries and errors such as the inclusion of year-old children. CalGangs represents racial profiling with little proof to back up the allegations of gang membership. The majority of those in the database are Black and Latino men.

25.    On July 9, 2020, the L.A. County District Attorney's Office filed a 59-count criminal complaint against 3 of the officers -- Braxton Shaw, Michael Coblentz, and Nicolas Martinez. The criminal complaint accuses Braxton Shaw, Michael Coblentz, and Nicolas Martinez of conspiring to file false police reports and fabricate documents for court.

26.    On July 10, 2020, an LAPD memorandum confirmed that a total of twenty-four (24) LAPD officers are under investigation for falsifying police reports and misclassifying civilians as gang members or gang associates.

27.    One putative class member is Jajuan Johnson. Mr. Johnson recently graduated from high school in south Los Angeles. Notably, he scored sixty (62) points in a varsity basketball game during his 2018 senior year. He is soft-spoken and has no criminal record.

28.    On January 13, 2019, Johnson was a passenger in a car being driven in Los Angeles when LAPD officers pulled over the vehicle, ostensibly for tinted windows. Officers came up with a reason to search the car. LAPD officers then blatantly lied in the police report they authored by contending that Mr. Johnson, a college student, Jamba Juice employee and aspiring writer was a member of a Blood street gang. The LAPD officers reasoned that because Mr. Johnson's cousin was an alleged gang member, he too must be gang affiliated.

29.    As a result, Mr. Johnson is currently being prosecuted by the Los Angeles City Attorney's Office pursuant to a fabricated gang allegation under Penal Code Section 186.22. Mr. Johnson consistently denied any gang membership to no avail. Because of the LAPD's false claims against him, Mr. Johnson has suffered the loss of employment, damage to his reputation and severe depression. If convicted,

Mr. Johnson will be required to register as a gang member.

30.     Branden Costa is another putative class member. Branden Costa is a young Black man, had just graduated from a Palisades area high school and was a Division 1 prospect athlete.

31.     One afternoon he was returning home from visiting a friend at the California Hospital in Downtown Los Angeles. That day a shooting occurred at a park a short distance from Mr. Costa's home. Time-verified security footage from the hospital showed Mr. Costa exiting the lobby <u>ten</u> minutes before the shooting. The shooting location, however, was a <u>twenty</u>-minute commute from the hospital. Nonetheless, LAPD officers falsely accused Mr. Costa of being the shooter. In an effort to unlawfully convict Mr. Costa, LAPD officers prepared and submitted false police reports claiming Mr. Costa was <u>a</u> gang member, even though LAPD officers had no credible evidence to support this claim. Mr. Costa expressly told LAPD officers he was not a gang member. Although Mr. Costa was acquitted of all charges, the falsely contrived gang identification followed him and has plagued his life every day since, causing him incalculable suffering and damage.

32.     The named Plaintiffs are suing on behalf of a class of similarly situated persons throughout Los Angeles who have been victims of scofflaw Los Angeles Police Department officers who filed fraudulent reports, lied under oath, and abused gang database systems.

## CLASS ACTION ALLEGATIONS

33.     The named Plaintiffs bring this action individually and on behalf of a proposed class of all other persons similarly situated pursuant to Federal Rules of Civil Procedure Rule 23(b)(1), (b)(2) and (b)(3). The damages classes are defined as:

A.     Approximately one thousand (1,000) individuals, if not more, who were subjected to misclassification as gang members in Los Angeles City reports;

B.     Approximately five hundred (500) individuals, if not more, who were made part of a gang database; and

1    C.    Approximately five thousand (5,000) individuals, if not more, who were
2    misclassified as gang associates.

3    34.    Each class is inclusive of people who were misclassified either as gang
4    members of gang associated by LAPD officials. The first class of a presently
5    unknown number but is estimated as in excess of one thousand (1,000) individuals,
6    the second class consists of a presently unknown number but is estimated as in excess
7    of five hundred (500) individuals, and the third class consists of a presently unknown
8    number but is estimated as in excess of five thousand (5,000) individuals.

9    35.    Because the issues in the three (3) classes are substantially the same and
10    arise from the same events, the Federal Rules of Civil Procedures Rule 23 criteria for
11    the classes are discussed jointly without differentiating between the different classes.

12    36.    Questions of law or fact common to putative class members
13    predominate over any questions affecting only individual members and a class action
14    is superior to other available methods for fairly and efficiently adjudicating this
15    lawsuit.

16    37.    The claims of the putative class satisfy the requirements of Federal Rule
17    of Civil Procedure 23(b)(3) and, alternatively, Rule 23(b)(2).

18    38.    Defendants detained and/or arrested the putative class and sub-classes
19    as a group and treated all similarly, acting on ground applicable to the putative class.
20    The named Plaintiffs claim that the First, Fourth, and Fourteenth Amendment rights
21    were violated raise common question of law and fact. The named Plaintiffs claim
22    also claim their constitutional rights were also violated as a result of a long standing
23    or widespread custom and/or practice which was the moving force behind the
24    constitutional violations and therefore, the City of Los Angeles it liable under
25    municipal liability.

26    39.    Questions of law and fact are common to the class and sub-classes,
27    including whether the putative class and sub-classes were misclassified as gang
28    members or gang associates.

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

40.     The legal theories and factual predicates upon which the damages classes and sub-classes seek relief predominate over any questions affecting only individual members. The legal harms suffered by the named Plaintiffs and the class Plaintiffs are identical.

41.     The named Plaintiffs' claims are typical of those of the putative class and sub-class each represents, as each was engaged in or associated with peaceable and lawful free speech and assembly activity when each was subjected to excessive force and/or arrested.

42.     The named Plaintiffs will fairly and adequately represent the common class interest. The named Plaintiffs have a strong interest in achieving the relief requested in this Complaint, they have no conflicts with members of the Plaintiff class, and they will fairly and adequately protect the interests of the class.

43.     Counsel for the named Plaintiffs know of no conflicts among or between members of the class, the named Plaintiffs, or the attorneys in this action.

44.     The Defendants have acted and refused to act on grounds generally applicable to the putative class.

45.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent standards of conduct for the Defendants, thereby making a class action a superior method of adjudicating this lawsuit.

46.     Plaintiffs do not know the identities of all class members. Plaintiffs are informed and believe and thereon allege the identities of class members in the arrestee class may be obtained from the personal information compelled by Defendants through arrest records.

47.     Plaintiffs are informed and believe and thereon allege that the LAPD officers acted in accordance with orders given by supervisors from the highest command positions, in accordance with policies and procedures instituted by the LAPD and the City of Los Angeles.

///

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

48.    As a direct and proximate cause of the conduct described herein, the named individual Plaintiffs have been denied their constitutional statutory, and legal rights as stated herein, and have suffered general and special damages, including but not limited to, mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety and other damages in an amount according to proof.

49.    Defendants' acts were willful, wanton, malicious, and oppressive, and done with conscious or reckless disregard for, and deliberate indifference to, Plaintiffs' rights.

50.    Defendants' polices practices, customs, conduct and acts alleged herein resulted in, and will continue to result in, irreparable injury the Plaintiffs, including but not limited to violation of their constitutional and statutory rights. Plaintiffs have no plain, adequate, or complete remedy at law to address the wrong described herein. The Plaintiffs and class members intend in the future to exercise their constitutional rights of freedom of speech and association by engaging in expressive activities in the City of Los Angeles. Defendants' conduct described herein has created uncertainty among Plaintiffs with respect to their exercise now and in the future of these constitutional rights.

51.    An actual controversy exists between Plaintiffs and Defendants in that Plaintiffs contend that the policies, practices, and conduct of Defendants alleged herein are unlawful and unconstitutional, whereas Plaintiffs are informed and believe that Defendants contend that said policies, practices, and conduct are lawful and constitutional. Plaintiffs seek a declaration of rights with respect to this controversy.

52.    In accordance with Federal Rules of Civil Procedure, Rule 23(a) the members of the class are so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe and thereon allege that there are more than six thousand five hundred (6,500) individuals who were classified as gang members or gang associates by the

Los Angeles Police Department. Plaintiffs are informed and believe and thereon allege that the number of persons in the proposed class is in the thousands.

53.    In accordance with Federal Rules of Civil Procedure, Rule 23(a), there are questions of fact common to the class. Plaintiffs are informed and believe and thereon allege that the common questions of fact include, but are not limited to the following: (1) individuals who were subjected to misclassification as gang members in Los Angeles City reports; (2) individuals who were made part of a gang database; and (3) individuals who were misclassified as gang associates.

54.    In accordance with Federal Rules of Civil Procedure, Rule 23(a), there are questions of law common to the class. Plaintiffs are informed and believe and thereon allege that the common questions of law include but are not limited to the following: (1) Whether the City of Los Angeles violated the Fourth Amendment rights of people misclassified as gang members or gang associates; (2) Whether the City of Los Angeles violated the Fourteenth Amendment rights of people misclassified as gang members or gang associates; (4) Whether the City of Los Angeles violated the First Amendment rights of people misclassified as gang members or gang associates.

55.    In accordance with Federal Rules of Civil Procedure, Rule 23(a) the claims of the representative plaintiffs are typical of the class. Plaintiffs were victims of at least twenty-seven (27) Los Angeles Police Department officers, including Braxton Shaw, Michael Coblentz, and Nicholas Martinez who have already been charged with fifty-nine (59) criminal counts. Los Angeles Police Department officers lied on field interview cards by classifying people who are not gang members, as gang members, and/or classifying people who are not associated with a gang as "gang associates."

56.    Thus, Plaintiffs have the same interests and have suffered the same type of damages as the class members. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. Each class member suffered

1    actual damages from being subjected to misclassification as gang members or gang
2    associates.

3        57.    In accordance with Federal Rules of Civil Procedure, Rule 23 (a), the
4    representative plaintiffs will fairly and adequately protect the interests of the class.
5    The interests of the representative plaintiffs are consistent with and not antagonistic
6    to the interests of the class.

7        58.    In accordance with Federal Rules of Civil Procedure, Rule 23(b)(1)(A),
8    prosecutions of separate actions by individual members of the class would create a
9    risk that inconsistent or varying adjudications with respect to individual members of
10   the class would establish incompatible standards of conduct for the parties opposing
11   the class.

12       59.    In accordance with Federal Rules of Civil Procedure, Rule 23(b)(1)(B),
13   prosecutions of separate actions by individual members of the class would create a
14   risk of adjudications with respect to individual members of the class which would, as
15   a practical matter, substantially  impair or impede the interests of the other members
16   of the class to protect their interests.

17       60.    In accordance with Federal Rules of Civil Procedure, Rule 23(b)(2),
18   plaintiffs are informed and believe, and thereon allege the defendants have acted on
19   grounds generally applicable to the class.

20       61.     In accordance with Federal Rules of Civil Procedure, Rule 23(b)(3), the
21   questions of law or fact common to the members of the class predominate over any
22   questions affecting only individual members, and this class action is superior to other
23   available methods for the fair and efficient adjudication of the controversy between
24   the parties. Plaintiffs are informed and believe, and thereon allege that the interest of
25   class members in individually controlling the prosecution of a separate action is low
26   in that most class members would be unable to individually prosecute any action at
27   all. Plaintiffs are informed and believe, and thereon allege that the amounts at stake
28   for individuals are such that separate suits would be impracticable in that most

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

members of the class will not be able to find counsel to represent them. Plaintiffs are informed and believe and  allege that it is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, i.e., the City of Los Angeles. It will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

62.    Plaintiffs do not know the identities of all class members. Plaintiffs are informed and believe, and thereon allege the identities of the class members are ascertainable from the Los Angeles County District Attorney's Office, the Los Angeles City Attorney's Office and/or LAPD records, in particular the computer records used to track who are or were alleged gang members and alleged gang associates.

63.    Plaintiffs are informed and believe, and thereon allege that Los Angeles County District Attorney's Office, the Los Angeles City Attorney's Office and/or LAPD records reflect the identities, including addresses and telephone numbers, of the persons who are or were alleged gang members and alleged gang associates.

64.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the class. The class action will be manageable because reliable records systems exist from which to ascertain the members of the class. Liability can be determined on a class-wide basis. Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the class to a jury and extrapolating those damages to the class as a whole. Moreover, plaintiffs are represented by counsel with class action litigation experience, particularly against the City of Los Angeles and the Los Angeles Police Department.

65.    In accordance with Federal Rules of Civil Procedure, Rule 23(b)(3), class members must be furnished with the best notice practicable under the

circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that LA City Attorney's Office and/or LAPD computer records, and certainly police reports and F.1. cards etc., contain a last known address for class members. Plaintiffs contemplate that individual notice be given to class members at such last known address by first class mail. Plaintiffs contemplate that the notice inform class members of the following:

a.  The pendency of the class action, and the issues common to the class;

b.  The nature of the action;

c.  Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

d.  Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named plaintiffs and their counsel; and

e.  Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

66.  All of the following claims for relief are asserted against all Defendants

## FIRST CLAIM FOR RELIEF

### FOURTH AMENDMENT VIOLATIONS

### (42 U.S.C. § 1983)

### (ALL DEFENDANTS)

67.  Plaintiffs repeats and re-alleges each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

68.  In subjecting plaintiffs and class members to the unnecessary, unlawful, demeaning, and outrageous seizures and/or searches when plaintiffs and class members went outside, defendants, and each of them, violated plaintiffs' and class members' rights to be secure in their persons against unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United

1    States Constitution. Therefore, plaintiffs and class members are entitled to bring suit
2    and recover damages pursuant to 42 U.S.C. §1983.

3    69.    As a direct and proximate cause of the aforementioned acts, plaintiffs
4    and class members were damaged in an amount to be proven at trial.

5                    **SECOND CLAIM FOR RELIEF**

6          **FOR VIOLATION OF SUBSTANTIVE DUE PROCESS**

7                        **(42 U.S.C. § 1983)**

8                        **(ALL DEFENDANTS)**

9    70.    Plaintiffs repeats and re-alleges each allegation in all the preceding
10   paragraphs of this Complaint with same force and effect as if fully set forth herein.

11   71.    In subjecting plaintiffs and class members to the unnecessary, unlawful,
12   demeaning, and outrageous confinement and prohibition from going outside and/or
13   seizure, detention arrest, jailing and/or prosecution when plaintiffs and class
14   members went outside, defendants, and each of them, violated plaintiffs' and class
15   members' rights to travel and move freely about this state and/or the several states,
16   as guaranteed by the United States Constitution. Therefore, plaintiffs and class
17   members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

18   72.    As a direct and proximate cause of the aforementioned acts, plaintiffs
19   and class members were damaged in an amount to be proven at trial.

20                    **THIRD CLAIM FOR RELIEF**

21                      **FIRST AMENDMENT**

22                        **(42 U.S.C. § 1983)**

23                        **(ALL DEFENDANTS)**

24   73.    Plaintiffs repeats and re-alleges each allegation in all the preceding
25   paragraphs of this Complaint with same force and effect as if fully set forth herein.

26   74.    In subjecting plaintiffs and class members to the unnecessary, unlawful,
27   demeaning, and outrageous confinement and prohibition from going outside and/or
28   seizure, detention arrest, jailing and/or prosecution when plaintiffs and class

1    members went outside, defendants, and each of them, violated plaintiffs' and class

2    members' rights to freely associate, communicate and assemble with persons, at

3    times, and in places of their choosing, as guaranteed by the First and Fourteenth

4    Amendments to the United States Constitution. Therefore, plaintiffs and class

5    members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

6         75.    As a direct and proximate cause of the aforementioned acts, plaintiffs

7    and class members were damaged in an amount to be proven at trial.

8    **FOURTH CLAIM FOR RELIEF**

9    **MUNICIPAL LIABILITY (*MONELL*)**

10   **(42 U.S.C. § 1983)**

11   **(By Plaintiffs against Defendant CITY OF LOS ANGELES)**

12        76.    Plaintiffs repeats and re-alleges each allegation in all the preceding

13   paragraphs of this Complaint with same force and effect as if fully set forth herein.

14        77.    The City, through Chief Moore, and his predecessors, including former

15   Chief Charles Beck, and the LAPD, have failed to train their officers in the

16   constitutional treatment of innocent civilians vis-a-vis misclassification of Los

17   Angeles City residents as gang members or gang associates as revealed by the above

18   allegations. The City has a custom and policy of misclassifying people as gang

19   members or gang associates, submitting fraudulent reports affirming the

20   misclassification, inputting fraudulent information into gang databases and

21   encouraging LAPD officers into further perpetuating the foregoing. The City is well

22   aware of its constitutional duties. The need for training and discipline to enforce

23   Constitutional guarantees in such circumstances is obvious and necessary.

24        78.    On information and belief, Chief Moore and his predecessors delegated

25   responsibility and authority to persons within his command staff to act as the final

26   policy maker in determining whether to terminate, reprimand, or terminate LAPD

27   officers who were falsely classifying people and filing false reports which unlawfully

28   identified individuals. The persons who made these decisions, acted as the delegated

policy maker for the City of Los Angeles on these matters. There was no time, opportunity, or procedure for anyone other than the policymakers to review or revise the decisions prior to their final implementation.

79. Moreover, on and for some time prior to June 1, 2020 (and continuing to the present date), Defendants CITY, and DOES 1-10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

A. Unreasonably detaining and unreasonably arresting Los Angeles City civilians under the guise that said civilians were "gang members;"

B. Unreasonably detaining and unreasonably arresting Los Angeles City and County residents under the guise that said civilians were "gang associates;"

C. Falsifying official CITY reports affirming the misclassification of a civilian as gang members or gang associates;

D. Falsifying information placed into statewide California gang databases including CalGangs by the misclassification of a civilians as a gang members or gang associates;

E. Committing perjury in open court by further affirming the misclassification of civilians who were facing criminal charges;

F. Acquiescing, ratifying, and condoning the imposition of a criminal sentencing enhancements of an individuals who were misclassified as a gang members or gang associates.

G. Inadequately supervising, training, controlling, assigning, and disciplining CITY employees and other personnel, in gang intelligence, the reporting of gang intelligence, and the misclassification of civilians as gang members or gang associates;

///

**PLAINTIFFS' COMPLAINT FOR DAMAGES**

1   H.   By maintaining grossly inadequate procedures for reporting,
2   supervising, investigating, reviewing, disciplining and controlling the intentional
3   misconduct by Defendants.

4   I.   By having and maintaining the aforementioned unconstitutional policy,
5   custom, and practice with a deliberate indifference to individuals' safety and rights;

6   80.   By reason of the policies and practices of Plaintiffs and the class
7   Plaintiffs represent were severely injured and were subjected to constitutional
8   violations while the CITY ratified and condoned said conduct. The aforementioned
9   policies and practices of Defendants, including the custom, policy and practice of
10   Defendant CITY in allowing its officers to misclassify civilians and file false reports
11   was a violation of the First, Fourth, and Fourteenth Amendments of the Constitution.

12   81.   Defendants CITY and DOES 1-10, together with various other officials,
13   whether named or unnamed, had either actual or constructive knowledge of the
14   deficient policies, practices and customs alleged in the paragraphs above. Despite
15   having knowledge as stated above, these defendants condoned, tolerated and through
16   actions and inactions thereby ratified such policies. Said defendants also acted with
17   deliberate indifference to the foreseeable effects and consequences of these policies
18   with respect to the constitutional rights of Plaintiffs, and other individuals similarly
19   situated.

20   82.   Accordingly, Defendants CITY and Does 1-10 each are liable to
21   Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

22   83.   Plaintiffs further claim all of Plaintiffs' attorneys' fees and costs
23   incurred and to be incurred in Plaintiffs presenting, maintaining and prosecuting this
24   action under 42 U.S.C. Section 1988.

25   **PRAYER FOR RELIEF**

26   WHEREFORE, Plaintiff requests entry of judgment in their favor and against
27   Defendants as follows:

28   A. General and special damages according to proof;

B. As against the individual defendants only, punitive damages according to

C. For interest;

D. For reasonable costs of this suit and attorneys' fees, including pursuant to 42 U.S.C. § 1988;

E. For all other damages allowed under federal and state law and;

F. For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

Dated: August 2, 2020            **THE JUSTICE X LAW GROUP**

By: _____

HUMBERTO GUIZAR
AUSTIN R. DOVE
STEPHEN A. KING
CHRISTIAN CONTRERAS
Attorney for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury.

Dated: August 1, 2020            **THE JUSTICE X LAW GROUP**

By: _____

HUMBERTO GUIZAR
AUSTIN R. DOVE
STEPHEN A. KING
CHRISTIAN CONTRERAS
Attorney for Plaintiffs

**PLAINTIFFS' COMPLAINT FOR DAMAGES**