1  Humberto M. Guizar, Esq. (SBN 125769)   Austin R. Dove, Esq. (SBN 180321)
2     *hguizar@ghclegal.com*   **DOVE LAW CORP.**
   Christian Contreras, Esq. (SBN 330269)     *dovelawcorp@gmail.com*
3     *cconterras@ghclegal.com*   Justice X Building
   **LAW OFFICES OF HUMBERTO**   3500 W. Beverly Blvd.
4  **GUIZAR, APC**   Montebello, California 90640
   Justice X Building   Telephone: (213) 487-8300
5  3500 W. Beverly Blvd.
   Montebello, California 90640
6  Telephone: (323) 725-1151

7  (ADDITIONAL COUNSEL LISTED ON NEXT PAGE)

8  *Attorneys for Plaintiffs*

9

10               **UNITED STATED DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12  SARA OCHOA, BRANDEN COSTA,      )   **CASE NO: 2:20-cv-06963-AB (AGR)**
   JAJUAN JOHNSON, ANTONIO MAY,    )
13  and MICHAEL PERR, KIVON        )   **SECOND AMENDED CLASS**
   WILLIAMS, GADSEEL QUINONEZ,     )   **ACTION COMPLAINT FOR**
14  and JOSE QUINONEZ individually and )   **DAMAGES AND INJUNCTIVE**
   on behalf of a class of similarly situated )   **RELIEF**
15  persons,                        )
                                    )   1.  Fourth Amendment Violations
16          Plaintiffs,             )       (42 U.S.C. § 1983);
                                    )   2.  Fourteenth Amendment Violations -
17          v.                      )       Substantive Due Process
                                    )       (42 U.S.C. § 1983);
18  CITY OF LOS ANGELES, a legal    )   3.  First Amendment Violations
   subdivision of the State of California; )       (42 U.S.C. § 1983);
19  BRAXSTON SHAW; MICHAEL         )   4.  Fourteenth Amendment Violations -
   COBLENTZ; NICOLAS MARTINEZ;     )       Equal Protection
20  and DOES 1 through 10, inclusive, )       (42 U.S.C. § 1983);
                                    )   5.  Municipal Liability (*Monell*)
21                                  )       (42 U.S.C. § 1983);
            Defendants.            )   6.  Tom Bane Act Violations
22                                  )       (Civil Code § 52.1);
                                        7.  Negligence;
23                                      8.  Defamation;
                                        9.  Torts in Essence;
24                                      10. Injunctive Relief
25
26
27                                      **DEMAND FOR JURY TRIAL**
28

─────────────────────────────────────────────

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1  Stephen A. King, Esq. (SBN 224683)
2     *sking@kingsjusticelaw.com*
   **KINGS JUSTICE, LLC**
3  Justice X Building
   3500 W. Beverly Blvd.
4  Montebello, California 90640
   Telephone: (323) 546-4529
5

6  V. James DeSimone, (SBN 119668)
     *vjdesimone@gmail.com*
7  **V. JAMES DESIMONE LAW**
   13160 Mindanao Way, Suite 280
8  Marina Del Rey, CA 90292
   Telephone: (310) 693.5561
9

10 Paul Hoffman, Esq. (SBN 71244)
     *hoffpaul@aol.com*
11 Michael D. Seplow, Esq. (SBN 150183)
     *mseplow@sshhzlaw.com*
12 Aidan C. McGlaze, Esq. (SBN 277270)
     *amcglaze@sshhzlaw.com*
13 **SCHONBRUN SEPLOW HARRIS**
14 **HOFFMAN & ZELDES LLP**
   11543 W. Olympic Blvd.
15 Los Angeles, California 90064
   Telephone: (310) 396-0731
16 Facsimile: (310) 399-7040

17

18

19

20

21

22

23

24

25

26

27

28

---

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

The above-named Plaintiffs, individually and on behalf of others similarly situated, allege the following upon information and belief:

## INTRODUCTION

1.      Public trust is the bedrock of community policing. The allegations in this Complaint shake the very core of that foundation. This action stems from the misclassification of hundreds, if not thousands, of City of Los Angeles residents as gang members by at least twenty-seven (27) Los Angeles Police Department (hereinafter "LAPD") officers, including Defendants Braxton Shaw, Michael Coblentz, and Nicolas Martinez, who have been charged with fifty-nine (59) criminal counts.

2.      Los Angeles Police Department officers routinely falsified Field Interview (hereinafter "FI") cards by classifying people who are not gang members, as gang members or gang associates. LAPD and its officers further violated public trust and numerous laws by entering false descriptions of innocent civilians as gang members into an official state-wide database. In many instances LAPD officers falsely stated in official records that the individuals had "self-admitted" gang affiliation when no such admissions had occurred. These false reports resulted in devastating consequences for Plaintiffs and the putative class members, almost all of whom were Black and Latino, including imprisonment, deprivation of civil rights, and practical consequences such as not being able to obtain a job, rent an apartment, or receive financial aid for college.

3.      As an example, class members, Gadseel Quinonez and Jose Quinonez are two brothers who live in South Los Angeles, California. Gadseel Quinonez and Jose Quinonez are young Latino men who work in a recycling center in South Los Angeles, an area which is patrolled by the Metropolitan Division of the Los Angeles Police Department. In or around 2018, Braxston Shaw who was partnered with Nicholas Martinez, wrote an FI card falsely documenting Gadseel Quinonez and Jose Quinonez as MS-13 gang members with the gang monikers "Squealer" and "Sneaks,"

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

respectively. On July 9, 2020, a fifty-nine (59) count criminal complaint was filed by the Los Angeles County District Attorney against Braxton Shaw, Michael Coblentz and Nicolas Martinez for various crimes, including felonies, for the falsification of FI cards and fabrication of non-existent people as gang members. Among the victims in the criminal complaint are Gadseel Quinonez, Jose Quinonez and Kivon Williams.

4.    As another example, class member, Sara Ochoa is a young Latina woman from East Los Angeles and made it out of the low-income neighborhood where she grew up to become a correctional officer of the State of California. Ms. Ochoa served as a public servant for the State of California up until she became a victim of LAPD officers on January 18, 2020 when Ms. Ochoa was misclassified as a "gang associate" simply for going back to visit her childhood neighborhood. Unfortunately, Ms. Ochoa was not only misclassified as a "gang associate," but she was also subjected to an unreasonable detention by being handcuffed on the street in public display for approximately twenty (20) minutes while her vehicle and belongings in her vehicle were ransacked by LAPD officers.

5.    Another putative class member is Jajuan Johnson. Mr. Johnson recently graduated from high school in south Los Angeles. Notably, he scored sixty-two (62) points in a varsity basketball game during his 2018 senior year. He is soft-spoken and has no criminal record. On January 13, 2019, Johnson was a passenger in a car being driven in Los Angeles when LAPD officers pulled over the vehicle, ostensibly for tinted windows. The officers concocted a pretense to search the car, and then blatantly lied in the police report they authored by contending that Mr. Johnson – a college student, Jamba Juice employee and aspiring writer – was a member of a Blood street gang. The LAPD officers reasoned that because Mr. Johnson's cousin was an alleged gang member, he too must be gang affiliated. As a result, Mr. Johnson is currently being prosecuted by the Los Angeles City Attorney's Office pursuant to a fabricated gang allegation under Penal Code Section 186.22. Mr. Johnson consistently denied any gang membership to no avail. Because of the LAPD's false

claims against him, Mr. Johnson has suffered the loss of employment, damage to his reputation and severe depression. If convicted, Mr. Johnson will be required to register as a gang member.

6.     Moreover, Branden Costa, a young Black man, had just graduated from a Palisades area high school and was a Division 1 prospect athlete. One afternoon he was returning home from visiting a friend at the California Hospital in Downtown Los Angeles. That day a shooting occurred at a park a short distance from Mr. Costa's home. Time-verified security footage from the hospital showed Mr. Costa exiting the lobby ten minutes before the shooting. The shooting location, however, was a twenty-minute commute from the hospital. Nonetheless, LAPD officers falsely accused Mr. Costa of being the shooter. In an effort to unlawfully convict Mr. Costa, LAPD officers prepared and submitted false police reports claiming Mr. Costa was a gang member, even though LAPD officers had no credible evidence to support this claim. Mr. Costa expressly told LAPD officers he was not a gang member. Although Mr. Costa was acquitted of all charges, the falsely contrived gang identification followed him and has plagued his life every day since, causing him incalculable suffering and damage.

7.     The above are just a few examples of the lasting harm which the LAPD has inflicted upon thousands of people as a result of falsely and publicly branding them as gang members or associates. Critically, the LAPD engaged in racial profiling and primarily targeted racial minorities, namely Latinos and African-Americans, in this widespread, destructive and fraudulent practice.

8.     In bringing this action, Plaintiffs seek damages and injunctive relief on behalf of themselves and other similarly situated persons who as a result of the unlawful actions of the LAPD have been falsely labeled as gang members or associates. In particular, Plaintiffs seek an order requiring the LAPD to take all necessary actions to purge any and all gang databases or similar records of the false information concerning Plaintiffs and the members of the putative class and to

3

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

publicly clear their names and to take all reasonable and necessary actions to prevent these abuses from occurring, including enjoining LAPD officers from making gang identifications during field interviews and other encounters.

## JURISDICTION AND VENUE

9.     This action is properly filed in the Central District of the United States District Court for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth and Fourteenth Amendment of the United States Constitution, and the California Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

10.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, as all Defendants reside in, and all events giving rise to the claims herein occurred in, the Central District of California.

## PARTIES

**Plaintiffs:**

11.     At all relevant times, Plaintiff SARA OCHOA is and was an individual residing in the County of Los Angeles, California.

12.     At all relevant times, Plaintiff BRANDEN COSTA is and was an individual residing in the County of Los Angeles, California.

13.     At all relevant times, Plaintiff JAJUAN JOHNSON is and was an individual residing in the County of Los Angeles, California.

14.     At all relevant times, Plaintiff ANTONIO MAY is and was an individual residing in the County of Los Angeles, California.

15.     At all relevant times, Plaintiff MICHAEL PERRY is and was an individual residing in the County of Los Angeles, California.

16.     At all relevant times, Plaintiff GADSEEL QUINONEZ is and was an individual residing in the County of Los Angeles, California.

17.     At all relevant times, Plaintiff JOSE QUINONEZ is and was an individual residing in the County of Los Angeles, California.

18. At all relevant times, Plaintiff KIVON WILLIAMS is and was an individual residing in the County of Los Angeles, California.

19. The Plaintiff classes consist of: 1) approximately one thousand (1,000) individuals, if not more, who were subjected to misclassification as gang members in LAPD reports; 2) approximately five hundred (500) individuals, if not more, who were made part of a gang database; and 3) approximately five thousand (5,000) individuals who were misclassified as gang associated.

20. On or about October 8, 2020, Plaintiffs submitted claims for damages on behalf of themselves and the putative class members to the City of Los Angeles pursuant to Government Code Section 910. On or about November 10, 2020, Defendant City of Los Angeles rejected Plaintiffs' claims. Accordingly, Plaintiffs have duly complied with the requirements of the Government Claims Act and have timely filed their claims under California law within six months of the denial of their claims by the City.

**Defendants:**

21. Defendant City of Los Angeles is a municipal corporation duly organized and existing under the Constitution and laws of the State of California. The Los Angeles Police Department is a local government entity and an agency of Defendant City of Los Angeles, and all actions of the LAPD and its employees are the legal responsibility of the City of Los Angeles. The City of Los Angeles is sued in its own right on the basis of its policies, customs, and practices which gave rise to Plaintiffs' federal rights claims. Moreover, the City of Los Angeles is vicariously liable under California law (including Government Code Section 815.2) for the acts and omissions of its employees, including the individual defendants, who were at all relevant times acting within the course and scope of their employment as officers of the LAPD.

///

///

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

22.     Defendant BRAXSTON SHAW was, and at all times relevant to this action, a Los Angeles Police Department officer. He is sued in both his individual and official capacities.

23.     Defendant MICHAEL COBLENTZ was, and at all times relevant to this action, a Los Angeles Police Department officer. He is sued in both his individual and official capacities.

24.     Defendant NICOLAS MARTINEZ was, and at all times relevant to this action, a Los Angeles Police Department officer. He is sued in both his individual and official capacities.

25.     Plaintiffs are informed, believe, and thereupon allege that Does 1 through 10 were the agents, servants, and employees of Defendants City of Los Angeles and/or the LAPD. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore sue these Defendant by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. The individual Doe Defendants are sued in both their individual and official capacities.

26.     Plaintiffs are informed, believe, and thereupon allege at all times relevant, Does 1 through 10, in addition to the named Defendants, are responsible in some manner for the damages and injuries alleged herein.

27.     Plaintiffs are informed, believe, and thereupon allege that at all times relevant, Defendants, and each of them, were the agents, servants and employees of the other Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer. At all times Defendants were acting under color of state law.

28.     Plaintiffs are informed, believe, and thereupon allege that the practices, policies, and customs of the City of Los Angeles and/or the LAPD caused the unlawful action taken against Plaintiffs.

///

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1

**FACTUAL ALLEGATIONS**

2      29.    The City of Los Angeles Police Department has manipulated the law to

3    criminalize innocent people. Specifically, California Penal Code (hereinafter

4    sometimes "CPC") Section 186.22 is a statute that gives police officers broad

5    discretion to arrest individuals on the premise that the person committed a crime for

6    the benefit, at the direction and in association with a criminal street gang. LAPD

7    officers, since the inception of the statute, created an unwritten custom and practice

8    of using CPC Section 186.22 to criminalize innocent people and falsely classify them

9    as gang members.

10      30.    In many cases, LAPD officers falsely incriminated members of this

11    class by applying gang enhancements to simple offenses like marijuana possession

12    or receiving stolen property. This practice exposed these criminal defendants to

13    extremely harsh sentences. With exposure to automatically enhanced terms of

14    imprisonment, many individuals accepted plea deals to lesser offenses to avoid being

15    locked up for decades. Others, who had the audacity to insist on their innocence, were

16    found guilty by juries based on LAPD officers' perjured testimony, then sentenced

17    to many years including, in numerous instances, life in prison. Those same

18    individuals have been forced to register annually as gang members at the very police

19    stations where they were framed in the first place.

20      31.    In June of 2020, the California Department of Justice announced it was

21    suspending the use of CalGangs, citing questions about its accuracy and the desire to

22    "avoid any adverse impact on individuals, particularly in communities of color."

23    CalGangs is used by law enforcement agencies across the state of California to store

24    names and personal details of nearly eighty thousand (80,000) people suspected of

25    being active gang members or possibly associating with them, but the program has

26    long been controversial.

27      32.    LAPD records account for about 25% of all CalGangs entries.

28    ///

7

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

33.     On July 14, 2020, the California Department of Justice revoked LAPD's access to the statewide CalGangs database. In 2016, a state audit found that CalGangs was riddled with questionable entries and errors such as the inclusion of one-year-old children. CalGangs facilitated racial profiling without evidence, and the majority of those in the database are Black and Latino men.

34.     On July 9, 2020, the L.A. County District Attorney's Office filed a fifty-nine count criminal complaint – including felonies – against three LAPD officers: Braxton Shaw, Michael Coblentz, and Nicolas Martinez. The criminal complaint accuses Braxton Shaw, Michael Coblentz, and Nicolas Martinez of conspiring to file false police reports, fabrication of false court documents, falsification of FI cards, and the fabrication of non-existent people as gang members. Among the victims in the criminal complaint are Gadseel Quinonez, Jose Quinonez, and Kivon Williams.

35.     On July 10, 2020, an LAPD memorandum confirmed that a total of twenty-four (24) LAPD officers are under investigation for falsifying police reports and misclassifying civilians as gang members or gang associates.

36.     Plaintiffs Gadseel Quinonez and Jose Quinonez are two brothers who live in South Los Angeles, California. They are young Latino men who work in a recycling center in South Los Angeles, an area which is patrolled by the Metropolitan Division of the Los Angeles Police Department. In or around 2018, Braxston Shaw who was partnered with Nicholas Martinez, wrote an FI card falsely documenting Gadseel Quinonez and Jose Quinonez as MS-13 gang members with the gang monikers "Squealer" and "Sneaks," respectively.

37.     Plaintiff Kivon Williams is a young Black man who lives in South Los Angeles. In or around 2018, Braxston Shaw who was partnered with Michael Coblentz, wrote an FI card falsely documenting Kivon Williams as a "77 Swan" gang member with "Swan's" and "77" tattoos on his neck, and a moniker, "Dub Bird."

///

///

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

38.     Plaintiff Jajuan Johnson recently graduated from high school in south Los Angeles. Notably, he scored sixty (62) points in a varsity basketball game during his 2018 senior year. He is soft-spoken and has no criminal record.

39.     On January 13, 2019, Johnson was a passenger in a car being driven in Los Angeles when LAPD officers pulled over the vehicle, ostensibly for tinted windows. Officers came up with a reason to search the car. LAPD officers then blatantly lied in the police report they authored by contending that Mr. Johnson, a college student, Jamba Juice employee and aspiring writer was a member of a Blood street gang. The LAPD officers wrongfully asserted that because Mr. Johnson's cousin was an alleged gang member, he too must be gang affiliated.

40.     As a result, Mr. Johnson is currently being prosecuted by the Los Angeles City Attorney's Office pursuant to a fabricated gang allegation under Penal Code Section 186.22. Mr. Johnson consistently denied any gang membership to no avail. Because of the LAPD's false claims against him, Mr. Johnson has suffered the loss of employment, damage to his reputation and severe depression. If convicted, Mr. Johnson will be required to register as a gang member.

41.     Plaintiff Branden Costa is a young Black man. One afternoon, recently after he graduated from a Palisades area high school as a Division 1 prospect athlete, he was returning home from visiting a friend at the California Hospital in Downtown Los Angeles.  That day a shooting occurred at a park a short distance from Mr. Costa's home. Time-verified security footage from the hospital showed Mr. Costa exiting the lobby ten minutes before the shooting. The shooting location, however, was a twenty-minute commute from the hospital. Nonetheless, LAPD officers falsely accused Mr. Costa of being the shooter. In an effort to unlawfully convict Mr. Costa, LAPD officers prepared and submitted false police reports claiming Mr. Costa was a gang member, even though LAPD officers had no credible evidence to support this claim. Mr. Costa expressly told LAPD officers he was not a gang member. Although Mr. Costa was acquitted of all charges, the falsely contrived gang identification

9

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1  followed him and has plagued his life every day since, causing him incalculable
2  suffering and damage.

3      42.    The named Plaintiffs are suing on behalf of a class of similarly situated
4  persons throughout Los Angeles who have been victims of scofflaw LAPD officers
5  who filed fraudulent reports, lied under oath, and abused gang database systems and
6  whose actions were condoned, approved and ratified by the  LAPD and its final
7  policy makers.

8                    **CLASS ACTION ALLEGATIONS**

9      43.    The named Plaintiffs bring this action individually and on behalf of a
10  proposed class of all other persons similarly situated pursuant to Federal Rules of
11  Civil Procedure Rule 23(b)(1), (b)(2) and (b)(3). The sub-classes are defined as:

12      a.  Approximately one thousand (1,000) individuals, if not more, who were
13          subjected to misclassification as gang members in Los Angeles City
14          reports;

15      b.  Approximately five hundred (500) individuals, if not more, who were made
16          part of a gang database; and

17      c.  Approximately five thousand (5,000) individuals, if not more, who were
18          misclassified as gang associates.

19      44.    Because the issues in the three (3) classes are substantially the same and
20  arise from the same events, the Federal Rules of Civil Procedures Rule 23 criteria for
21  the classes are discussed jointly without differentiating between the different classes.

22      45.    Questions of law or fact common to putative class members
23  predominate over any questions affecting only individual members and a class action
24  is superior to other available methods for fairly and efficiently adjudicating this
25  lawsuit.

26      46.    The claims of the putative class satisfy the requirements of Federal Rule
27  of Civil Procedure 23(b)(3) and, alternatively, Rule 23(b)(2).

28  ///

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

47.    Defendants detained and/or arrested the putative class and sub-classes as a group and treated all similarly, acting on ground applicable to the putative class. The named Plaintiffs' claims that the First, Fourth, and Fourteenth Amendment rights, as well as their rights under California law, were violated raise common question of law and fact.   Plaintiffs also claim their constitutional rights were violated as a result of a long standing or widespread custom and/or practice which was the moving force behind the constitutional violations and therefore, the City of Los Angeles is liable under 42 U.S.C. Section 1983.

48.    Questions of law and fact are common to the class and sub-classes, including whether the putative class and sub-classes were misclassified as gang members or gang associates.

49.    The legal theories and factual predicates upon which the classes and sub-classes seek relief predominate over any questions affecting only individual members. The legal harms suffered by the named Plaintiffs and the class Plaintiffs are identical.

50.    The named Plaintiffs' claims are typical of those of the putative class and sub-classes each represents, as each was engaged in or associated with peaceable and lawful free speech and assembly activity when each was subjected to excessive force and/or arrested.

51.    The named Plaintiffs will fairly and adequately represent the common class interest. The named Plaintiffs have a strong interest in achieving the relief requested in this Complaint, they have no conflicts with members of the Plaintiff class, and they will fairly and adequately protect the interests of the class.

52.    Counsel for the named Plaintiffs know of no conflicts among or between members of the class, the named Plaintiffs, or the attorneys in this action.

53.    The Defendants have acted and refused to act on grounds generally applicable to the putative class.

///

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

54.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent standards of conduct for the Defendants, thereby making a class action a superior method of adjudicating this lawsuit.

55.     Plaintiffs do not know the identities of all class members. Plaintiffs are informed and believe and thereon allege the identities of class members in may be obtained from records and databases maintained by Defendants.

56.     Plaintiffs are informed and believe and thereon allege that the LAPD officers acted in accordance with orders given by supervisors from the highest command positions, in accordance with policies and procedures instituted by the LAPD and the City of Los Angeles.

57.     As a direct and proximate cause of the conduct described herein, the named individual Plaintiffs have been denied their constitutional, statutory, and legal rights as stated herein, and have suffered general and special damages, including but not limited to, mental and emotional distress, physical injuries and bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety, lost wages and opportunities, and other damages in an amount according to proof.

58.     Defendants' acts were willful, wanton, malicious, and oppressive, and done with conscious or reckless disregard for, and deliberate indifference to, Plaintiffs' rights.

59.     Defendants' polices practices, customs, conduct and acts alleged herein resulted in, and will continue to result in, irreparable injury the Plaintiffs, including but not limited to violation of their constitutional and statutory rights. Plaintiffs have no plain, adequate, or complete remedy at law to address the wrong described herein and therefore are entitled to injunctive relief. The Plaintiffs and class members intend in the future to exercise their constitutional rights of freedom of speech and association by engaging in expressive activities in the City of Los Angeles. Defendants' conduct described herein has created uncertainty among Plaintiffs with respect to their exercise now and in the future of these constitutional rights.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

60.     An actual controversy exists between Plaintiffs and Defendants in that Plaintiffs contend that the policies, practices, and conduct of Defendants alleged herein are unlawful and unconstitutional, whereas Plaintiffs are informed and believe that Defendants contend that said policies, practices, and conduct are lawful and constitutional. Plaintiffs seek a declaration of rights with respect to this controversy.

61.     In accordance with Federal Rules of Civil Procedure, Rule 23(a) the members of the class are so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of class members. Plaintiffs are informed and believe and thereon allege that there are more than six thousand five hundred (6,500) individuals who were classified as gang members or gang associates by the Los Angeles Police Department. Plaintiffs are informed and believe and thereon allege that the number of persons in the proposed class is in the thousands.

62.     In accordance with Federal Rules of Civil Procedure, Rule 23(a), there are questions of fact common to the class. Plaintiffs are informed and believe and thereon allege that the common questions of fact include, but are not limited to the following: (1) individuals who were subjected to misclassification as gang members in Los Angeles City reports; (2) individuals who were made part of a gang database; and (3) individuals who were misclassified as gang associates.

63.     In accordance with Federal Rules of Civil Procedure, Rule 23(a), there are questions of law common to the class. Plaintiffs are informed and believe and thereon allege that the common questions of law include but are not limited to the following: (1) Whether Defendants violated the Fourth Amendment rights of people misclassified as gang members or gang associates; (2) Whether Defendants violated the Fourteenth Amendment due process rights of people misclassified as gang members or gang associates; (3) Whether Defendants violated the Fourteenth Amendment rights to Equal Protection of people misclassified as gang members or gang associates; (4) Whether Defendants violated the First Amendment rights of people misclassified as gang members or gang associates and (5) Whether

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Defendants violated California law by misclassifying peoples as gang members and associates.

64.     In accordance with Federal Rules of Civil Procedure, Rule 23(a) the claims of the representative plaintiffs are typical of the class. Plaintiffs were victims of at least twenty-seven (27) Los Angeles Police Department officers, including Braxton Shaw, Michael Coblentz, and Nicolas Martinez who have already been charged with fifty-nine (59) criminal counts. Los Angeles Police Department officers lied on field interview cards by classifying people who are not gang members, as gang members, and/or classifying people who are not associated with a gang as "gang associates."

65.     Thus, Plaintiffs have the same interests and have suffered the same type of damages as the class members. Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. Each class member suffered actual damages from being subjected to misclassification as gang members or gang associates and each class member is entitled to injunctive relief.

66.     In accordance with Federal Rules of Civil Procedure, Rule 23 (a), the representative Plaintiffs will fairly and adequately protect the interests of the class. The interests of the representative plaintiffs are consistent with and not antagonistic to the interests of the class.

67.     In accordance with Federal Rules of Civil Procedure, Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

68.     In accordance with Federal Rules of Civil Procedure, Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially  impair or impede the interests of the other members

14

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

of the class to protect their interests.

69.    In accordance with Federal Rules of Civil Procedure, Rule 23(b)(2), plaintiffs are informed and believe, and thereon allege the defendants have acted on grounds generally applicable to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

70.    In accordance with Federal Rules of Civil Procedure, Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. Plaintiffs are informed and believe, and thereon allege that the interest of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. Plaintiffs are informed and believe, and thereon allege that the amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. Plaintiffs assert that it is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, i.e., the City of Los Angeles. It will promote judicial efficiency to resolve the common questions of law and fact in one forum, rather than in multiple courts.

71.    Plaintiffs do not know the identities of all class members. Plaintiffs are informed and believe, and thereon allege the identities of the class members are ascertainable from the Los Angeles County District Attorney's Office, the Los Angeles City Attorney's Office and/or LAPD records, in particular the computer records used to track who are or were alleged gang members and alleged gang associates.

72.    Plaintiffs are informed and believe, and thereon allege that Los Angeles County District Attorney's Office, the Los Angeles City Attorney's Office and/or LAPD records reflect the identities, including addresses and telephone numbers, of

the persons who are or were alleged gang members and alleged gang associates.

73.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the class. The class action will be manageable because reliable records systems exist from which to ascertain the members of the class. Liability can be determined on a class-wide basis. Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by trying the damages of a statistically valid sample of the class to a jury and extrapolating those damages to the class as a whole. Moreover, plaintiffs are represented by counsel with class action litigation experience, particularly against the City of Los Angeles and the Los Angeles Police Department.

74.     In accordance with Federal Rules of Civil Procedure, Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that LA City Attorney's Office and/or LAPD computer records, and certainly police reports and FI cards etc., contain a last known address for class members. Plaintiffs contemplate that individual notice be given to class members at such last known address by first class mail. Plaintiffs contemplate that the notice inform class members of the following:

a.  The pendency of the class action, and the issues common to the class;

b.  The nature of the action;

c.  Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

d.  Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named plaintiffs and their counsel; and

///

16

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

e.  Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

75.  All of the following claims for relief are asserted against all Defendants:

**FIRST CLAIM FOR RELIEF**

**FOURTH AMENDMENT VIOLATIONS**

**(42 U.S.C. § 1983)**

**(BY ALL PLAINTIFFS AGAINST DEFENDANTS BRAXSTON SHAW; MICHAEL COBLENTZ; NICOLAS MARTINEZ)**

76.  Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

77.  In subjecting Plaintiffs and class members to the unnecessary, unlawful, demeaning, and outrageous seizures and/or searches when Plaintiffs and class members went outside, defendants, and each of them, violated Plaintiffs' and class members' rights to be secure in their persons against unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution. Therefore, plaintiffs and class members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

78.  As a direct and proximate cause of the aforementioned acts, plaintiffs and class members were damaged in an amount to be proven at trial.

79.  Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

///

///

///

///

///

17

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

## SECOND CLAIM FOR RELIEF

### FOR FOURTEENTH AMENDMENT VIOLATIONS - SUBSTANTIVE DUE PROCESS

### (42 U.S.C. § 1983)

### (BY ALL PLAINTIFFS AGAINST DEFENDANTS BRAXSTON SHAW; MICHAEL COBLENTZ; NICOLAS MARTINEZ)

80.     Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

81.     Defendants' actions in arbitrarily and wrongfully classifying Plaintiffs and members of the putative class as gang members or associates, without any basis in fact or method of challenging such designation, violated the substantive due process rights of Plaintiffs and the putative class members.  These false designations by the LAPD, a government agency, created a permanent stigma on the names of Plaintiffs and class members which will forever interfere with their rights to participate in society, including their ability to obtain employment and educational opportunities.

82.     In subjecting Plaintiffs and class members to the unnecessary, unlawful, demeaning, and outrageous confinement and prohibition from going outside and/or seizure, detention arrest, jailing and/or prosecution when Plaintiffs and class members went outside, defendants, and each of them, violated plaintiffs' and class members' rights to travel and move freely about this state and/or the several states, as guaranteed by the United States Constitution. Therefore, Plaintiffs and class members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

83.     As a direct and proximate cause of the aforementioned acts, Plaintiffs and class members were damaged in an amount to be proven at trial.

84.     Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**THIRD CLAIM FOR RELIEF**

**FIRST AMENDMENT VIOLATIONS**

**(42 U.S.C. § 1983)**

**(BY ALL PLAINTIFFS AGAINST DEFENDANTS BRAXSTON SHAW;**

**MICHAEL COBLENTZ; NICOLAS MARTINEZ)**

85.    Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

86.    In subjecting Plaintiffs and class members to the unnecessary, unlawful, demeaning, and outrageous confinement and prohibition from going outside and/or seizure, detention arrest, jailing and/or prosecution when plaintiffs and class members went outside, defendants, and each of them, violated plaintiffs' and class members' rights to freely associate, communicate and assemble with persons, at times, and in places of their choosing, as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Therefore, Plaintiffs and class members are entitled to bring suit and recover damages pursuant to 42 U.S.C. §1983.

87.    As a direct and proximate cause of the aforementioned acts, Plaintiffs and class members were damaged in an amount to be proven at trial.

88.    Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

**FOURTH CLAIM FOR RELIEF**

**FOR FOURTEENTH AMENDMENT VIOLATIONS - EQUAL**

**PROTECTION**

**(42 U.S.C. § 1983)**

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS BRAXSTON**

**SHAW; MICHAEL COBLENTZ; NICOLAS MARTINEZ)**

89.    Plaintiffs repeat and re-alleges each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

19

90.     Plaintiffs are informed and believes and thereon allege that they and the putative class members were singled out and targeted for being misidentified as gang members or associates based on their race, color and/or ethnic background and that the LAPD treated racial minorities, namely African-Americans and Latinos, differently than other races in terms of labeling them as gang members or associates.

91.     Plaintiffs are informed and believe that they and the putative class members were subjected to intentional discrimination based on race, color and/or ethnicity by Defendants.

92.     Defendants' unlawful discriminatory conduct violated the Equal Protection Clause of the Fourteenth Amendment and therefore Defendants are liable to Plaintiffs and the putative class members under 42 U.S.C. Section 1983 for the unconstitutional actions.

93.     As a direct and proximate cause of the aforementioned acts, Plaintiffs and class members were damaged in an amount to be proven at trial.

94.     Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

<u>**FIFTH CLAIM FOR RELIEF**</u>

**MUNICIPAL LIABILITY (*MONELL*)**

**(42 U.S.C. § 1983)**

**(BY ALL PLAINTIFFS AGAINST DEFENDANT CITY OF LOS ANGELES)**

95.     Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

96.     Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendant City is liable for all injuries sustained by Plaintiffs as set forth herein.  Defendant City bears liability because its policies, practices and/or customs were a cause of and Plaintiffs' injuries, and/or because Defendant City ratified the unlawful actions of its employees that

1  caused Plaintiffs' damages.

2       97.    The City, through LAPD Chief Moore, and his predecessors, including

3  former Chief Charles Beck, and the LAPD, have failed to train their officers in the

4  constitutional treatment of innocent civilians vis-a-vis misclassification of Los

5  Angeles City residents as gang members or gang associates as revealed by the above

6  allegations. The City has a custom and policy of misclassifying people as gang

7  members or gang associates, submitting fraudulent reports affirming the

8  misclassification, inputting fraudulent information into gang databases and

9  encouraging LAPD officers into further perpetuating the foregoing. The City is well

10 aware of its constitutional duties. The need for training and discipline to enforce

11 Constitutional guarantees in such circumstances is obvious and necessary.

12      98.    On information and belief, Chief Moore and his predecessors delegated

13 responsibility and authority to persons within his command staff to act as the final

14 policy maker in determining whether to terminate, reprimand, or terminate LAPD

15 officers who were falsely classifying people and filing false reports which unlawfully

16 identified individuals. The persons who made these decisions, acted as the delegated

17 policy maker for the City of Los Angeles on these matters. There was no time,

18 opportunity, or procedure for anyone other than the policymakers to review or revise

19 the decisions prior to their final implementation.

20      99.    Moreover, on and for some time prior to June 1, 2020 (and continuing

21 to the present date), Defendants CITY, and DOES 1-10, acting with gross negligence

22 and with reckless and deliberate indifference to the rights and liberties of the public

23 in general, and of Plaintiffs, and of persons in their class, situation and comparable

24 position in particular, knowingly maintained, enforced and applied an official

25 recognized custom, policy, and practice of:

26      a. Unreasonably detaining and unreasonably arresting Los Angeles City

27         civilians under the guise that said civilians were "gang members;"

28 ///

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

b.  Unreasonably detaining and unreasonably arresting Los Angeles City and County residents under the guise that said civilians were "gang associates;"

c.  Falsifying official CITY reports affirming the misclassification of a civilian as gang members or gang associates;

d.  Falsifying information placed into statewide California gang databases including CalGangs by the misclassification of a civilians as a gang members or gang associates;

e.  Committing perjury in open court by further affirming the misclassification of civilians who were facing criminal charges;

f.  Acquiescing, ratifying, and condoning the imposition of a criminal sentencing enhancements of an individuals who were misclassified as a gang members or gang associates.

g.  Inadequately supervising, training, controlling, assigning, and disciplining CITY employees and other personnel, in gang intelligence, the reporting of gang intelligence, and the misclassification of civilians as gang members or gang associates;

h.  By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants.

i.  By having and maintaining the aforementioned unconstitutional policy, custom, and practice with a deliberate indifference to individuals' safety and rights;

j.  Condoning and ratifying the targeting of racial minorities, namely African-Americans and Latinos, to be misclassified as gang members or associates, thus fostering an official policy, practice and/or custom of discrimination against minorities.

100.  By reason of the policies and practices of Plaintiffs and the class Plaintiffs represent were severely injured and were subjected to constitutional

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1  violations while the CITY ratified and condoned said conduct. The aforementioned

2  policies and practices of Defendants, including the custom, policy and practice of

3  Defendant CITY in allowing its officers to misclassify civilians and file false reports

4  was a violation of the First, Fourth, and Fourteenth Amendments of the Constitution.

5      101.   Defendants CITY and DOES 1-10, together with various other officials,

6  whether named or unnamed, had either actual or constructive knowledge of the

7  deficient policies, practices and customs alleged in the paragraphs above. Despite

8  having knowledge as stated above, these defendants condoned, tolerated and through

9  actions and inactions thereby ratified such policies. Said defendants also acted with

10  deliberate indifference to the foreseeable effects and consequences of these policies

11  with respect to the constitutional rights of Plaintiffs, and other individuals similarly

12  situated.

13      102.   Accordingly, Defendants CITY and Does 1-10 each are liable to

14  Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

15      103.   Plaintiffs further claim all of Plaintiffs' attorneys' fees and costs

16  incurred and to be incurred in Plaintiffs presenting, maintaining and prosecuting this

17  action under 42 U.S.C. Section 1988.

18  **<u>SIXTH CLAIM FOR RELIEF</u>**

19  **TOM BANE ACT VIOLATIONS**

20  **(CAL. CIV. CODE § 52.1)**

21  **(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

22      104.   Plaintiffs repeat and re-allege each allegation in all the preceding

23  paragraphs of this Complaint with same force and effect as if fully set forth herein.

24      105.   As alleged herein, Defendants intentionally interfered by threats,

25  intimidation, and/or coercion with Plaintiffs' and the putative class members'

26  exercise and enjoyment of rights under federal and state law and under the federal

27  and state constitutions (including, without limitation, Amendments 1 and 4 of the

28  U.S. Constitution; California Civil Code Section 43 and Penal Code Sections 118,

23
**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

118.1, and 148.5   and Article I, Sections 1, 2, 7, 13, and 17 of the California Constitution), including, without limitation, the right to be free from right of protection, from personal insult, from defamation, and from harm to personal relations and   the rights to free speech and association, due process and equal protection.   Defendants acted intentionally and with reckless disregard for the rights of Plaintiffs and the members of the putative class.   Defendant City of Los Angeles is vicariously liable for the acts and omissions of its employees, including the LAPD officer defendants, who at all relevant times were acting within the course and scope of their employment.

106.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs and members of the putative class have suffered damages and therefore seek all damages, including actual, compensatory and statutory damages, which are recoverable pursuant to Civil Code Section 52.1 and any other applicable statutes. Plaintiffs and members of the putative class also seek equitable and injunctive relief.

107.   Plaintiffs are informed and believe and thereon allege that the aforementioned acts of the individual defendants, and each of them were willful, malicious, intentional, oppressive and despicable and/or were done in willful and conscious and reckless disregard of the rights, welfare and safety of Plaintiffs and members of the putative class, thereby justifying the award of punitive and exemplary damages against the individual (non-government entity) defendants in an amount to be determined at time of trial.

108.   Plaintiffs seek an award of reasonable attorneys' fees pursuant to Civil Code Section 52.1.

109.   As a direct and proximate cause of the aforementioned acts, Plaintiffs and class members were damaged in an amount to be proven at trial.

110.   Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

## SEVENTH CLAIM FOR RELIEF

## NEGLIGENCE, INCLUDING NEGLIGENT TRAINING, HIRING, AND SUPERVISION

## (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

111.   Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

112.   Defendants owed a duty of care to Plaintiffs and all class members, and were required to use reasonable diligence to ensure that Plaintiffs and the class were not harmed by Defendants' acts or omissions.  Defendants' acts and omissions were negligent and reckless, including but not limited to:

a.   The LAPD's failure to supervise, control, train, oversee and discipline officers of the LAPD such that they felt they could violate the rights of Plaintiffs and the members of the putative class with impunity;

b.   The LAPD's negligent failure to follow proper procedures for the use of FI cards and classifying persons as gang members or affiliates;

c.   The failure of supervisory employees of the LAPD, including Chiefs Moore and Beck, to prevent racial profiling and discrimination by LAPD officers in connection with identifying persons as being gang members or gang associates;

d.   The failure of supervisory employees of the LAPD, including Chiefs Moore and Beck, to properly train, supervise and discipline LAPD officers and other employees, regarding the identification of persons as gang members or affiliates; and

e.   The negligent hiring, retention and assignment of the LAPD officers and employees involved in the widespread scheme to misidentify persons as gang members or affiliates by supervisory employees of the LAPD including Chiefs Moore and Beck.

///

113.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and the putative class members have been damages as alleged herein. As a result of their conduct, Defendant City of Los Angeles is vicariously liable for Plaintiffs' damages pursuant to Government Code § 815.2 and the individual defendants are liable pursuant to Government Code §820, Civil Code §§ 1708 and 1714, among other statutes.  Defendant City of Los Angeles is vicariously liable for the acts and omissions of its employees, including the LAPD officer defendants, who at all relevant times were acting within the course and scope of their employment.

114.   As a direct and proximate cause of the aforementioned acts, Plaintiffs and class members were damaged in an amount to be proven at trial.

115.   Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

## EIGHTH CLAIM FOR RELIEF

### DEFAMATION

### (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

116.   Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

117.   Defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally caused excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiffs and the putative class members, to third persons and to the community. These false and defamatory statements included express and implied accusations that Plaintiffs and the putative class members were members or affiliates of criminal gangs These and other similar false statements expressly and impliedly stated that Plaintiffs and the putative class members were had engaged in criminal and illegal activities and/or associated with such persons.

///

118.   Plaintiff is informed and believes and thereon alleges that these false and defamatory statements and publications continue to be published and republished by Defendants. These false statements were outrageous, negligent, reckless, intentional, and maliciously published and republished by Defendants, and each of them. Plaintiffs are informed and believes that the negligent, reckless, and intentional publications by Defendants, and each of them, were and continue to be, foreseeably published and republished by Defendants, their agents and employees, recipients, in the community. Plaintiffs hereby seek damages for these publications and all foreseeable republications discovered up to the time of trial.

119.   During the above-described time-frame, Defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know. Those third person(s) to whom these Defendants published this defamation are believed to include, but are not limited to, the other agents and employees of Defendants, and each of them, and the community, all of whom are known to Defendants, and each of them, but unknown at this time to Plaintiff.

120.   The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiffs and the putative class members and their personal, business, and professional reputations. These publications included the following false and defamatory statements (in violation of Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiffs and the putative class members were members or associates of criminal gangs.

121.   Plaintiffs are informed and believes and fears that these false and defamatory per se statements will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiffs and the putative class members' business, professional,

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

and personal reputations. Plaintiffs and the putative class also seeks redress in this action for all foreseeable republications, including their own compelled self-publication of these defamatory statements.

122.   The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants, and each of them, but unknown to Plaintiff at this time.

123.   None of Defendants' defamatory publications against Plaintiff referenced above are true.

124.   The above defamatory statements were understood as assertions of fact, and not as opinion. Plaintiffs are informed and believe this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiffs seek redress by this action.

125.   Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiffs deny existed), since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiffs and members of the putative class in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, to retaliate against Plaintiff and to justify his firing.

126.   Each of these publications by Defendants, and each of them, were made with knowledge that no proper investigation supported the unsubstantiated and obviously false statements. The Defendants published these statements knowing them to be false, unsubstantiated by any reasonable investigation and the product of hostile witnesses.  These acts of publication were known by Defendants, and each of

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

them, to be negligent to such a degree as to be reckless.  In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false.  Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information. Defendant City of Los Angeles is vicariously liable for the acts and omissions of its employees, including the LAPD officer defendants, who at all relevant times were acting within the course and scope of their employment.

127.   The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiffs and the putative class members and the design and intent to injure Plaintiffs and the putative class and their good name, reputation, employment and employability.  Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

128.   As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiffs and the putative class members have suffered injury to their personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiffs' economic, emotional, and general damage in an amount according to proof.

///

///

129.   Plaintiffs and the putative class members are also entitled to injunctive and declaratory relief, including the clearing of their names from any gang databases or records.

130.   Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiffs thus are entitled to recover punitive and exemplary damages from the non- government entity Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

<u>**NINTH CLAIM FOR RELIEF**</u>

**TORTS IN ESSENCE**

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

131.   Plaintiffs repeat and re-allege each allegation in all the preceding paragraphs of this Complaint with same force and effect as if fully set forth herein.

132.   As alleged herein, Defendants caused false information about Plaintiffs and the Plaintiffs class being gang members or affiliates to be placed in official government reports and records.   Defendants' actions were unlawful and violated numerous provisions of California law, including without limitation Penal Code Sections 118, 118.1 and/or 148.5 which prohibit making false statements in official records and perjury.

133.   Plaintiffs and members of the class were directly harmed by Defendants' unlawful conduct and are persons whom these statutes were intended to protect. Accordingly, Defendants are liable for the damages they caused to Plaintiffs and the

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1  class by their violation of these statutes. Defendant City of Los Angeles is vicariously

2  liable for the acts and omissions of its employees, including the LAPD officer

3  defendants, who at all relevant times were acting within the course and scope of their

4  employment.

5      134.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs

6  and members of the putative class have suffered damages including general and

7  compensatory damages.

8      135.   Plaintiffs are informed and believe and thereon allege that the

9  aforementioned acts of the individual defendants, and each of them were willful,

10  malicious, intentional, oppressive and despicable and/or were done in willful and

11  conscious and reckless disregard of the rights, welfare and safety of Plaintiffs and

12  members of the putative class, thereby justifying the award of punitive and exemplary

13  damages against the individual (non-government entity) defendants in an amount to

14  be determined at time of trial.

15  **TENTH CLAIM FOR RELIEF**

16  **INJUNCTIVE RELIEF**

17  **(First, Fourth, and Fourteenth Amendments to the U.S. Constitution;**

18  **42 U.S.C. § 1983; California Constitution Article 1, §§ 2, 3, 7, 13,**

19  **Penal Code §§ Civil Code § 52.1,–for Injunctive Relief)**

20  **(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

21      136.   Plaintiffs repeat and re-allege each allegation in all the preceding

22  paragraphs of this Complaint with same force and effect as if fully set forth herein.

23      137.   The Defendants engaged in repeated, widespread violations of law, as

24  outlined above.

25      138.   Plaintiffs seek injunctive relief in the form of an order requiring that

26  Defendants to remove their names and the names of members of the class from any

27  records or databases which labels them as gang members or gang associates and

28  requiring Defendants identify to the Plaintiffs and the class all entities and agencies

31

to which such information has been disseminated; and that all such disseminated records be collected and destroyed.

139.   Plaintiffs also seek injunctive relief in terms of ordering Defendants to establish procedures by which Plaintiffs and other class members can confirm that their names have been removed from any gang databases and seek immediate removal of their names of from databases.

140.   Defendant City, through the LAPD, has failed to train and supervise its officers about their legal obligations not to wrongfully classify persons as gang members or gang affiliates.   The recurrence of the same violations with respect to these arrests indicates an intentional refusal respect the rights of persons who were wrongfully identified as gang members or associates. Without intervention by this Court, Plaintiffs and members of the class are at risk of having their rights violated in the future due to the Defendants' demonstrated pattern of constitutional violations and illegal actions.   Plaintiffs and the class have no adequate remedy at law to protect their constitutional and statutory rights, and, without action by this court, will suffer irreparable injury, thereby entitling them to injunctive and declaratory relief.

141.   Defendants have acted and refused to act on grounds generally applicable to the putative class. Injunctive and declaratory relief for the putative class as a whole is appropriate.

142.   Defendants' polices practices, customs, conduct and acts alleged herein resulted in, and will continue to result in, irreparable injury to the Plaintiffs and the class, including but not limited to violation of their constitutional and statutory rights. Plaintiffs have no plain, adequate, or complete remedy at law to address the wrongs described herein.

143.   Without an order requiring Defendants to cease and desist from falsely identifying persons as gang members or affiliates, the Plaintiffs and class members are at grave risk that Defendants will again seek to misidentify them as gang members or associates in the future.

144.   Plaintiffs therefore seek injunctive relief from this Court to ensure that Plaintiffs and persons similarly situated will not suffer violations of their rights from Defendants' illegal and unconstitutional policies, customs, and practices described herein.  Accordingly, Defendants should be enjoined from identifying any person as a gang member or associate based on a field interview or other encounter.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs seek judgment as follows:

1.     An order certifying the class and each sub-class defined herein pursuant to Federal Rules of Civil Procedure, Rule 23(b)(2) and (3);

2.     A permanent injunction restraining Defendants from engaging in the unlawful and unconstitutional actions detailed above and retaining Court jurisdiction to enforce the terms of the injunction;

3.     A declaratory judgment that Defendants' conduct detailed herein was a violation of the rights under the Constitution and laws of the United States and the State of California and of Plaintiffs and the class members;

4.     An order directing that all records that Plaintiffs or any class member is or was a gang member or associate be removed from all criminal databases, whether operated by the City or County of Los Angeles, or the State of California,;

5.     An order directing that Defendants take all necessary steps to ensure that Plaintiffs and members of the class be removed from any gang database, including establishing a system which enables a person to challenge an improper gang designation and which requires that the City meet a substantial evidentiary burden before listing any person in any gang data base.

6.     An order enjoining the LAPD from identifying any person as a gang member or associate based on a field interview or other encounter.

7.     General and compensatory damages for Plaintiffs and the class they represent for the violations of their federal and state constitutional and statutory rights, in addition to pain and suffering, all to be determined according to proof;

33

8.   Statutory damages, including $4,000 per violation pursuant to Civil Code Section 52.1;

9.   An award of attorneys' fees pursuant to 42 U.S.C. § 1988, Cal. Civil Code §§ 52(b) & 52.1(h), and Cal. Code of Civil Proc. § 1021.5;

10.   Costs of suit;

11.   Pre and post-judgment interest as permitted by law; and

12.   Such other and further relief as the Court may deem just and proper.


Respectfully Submitted,

Dated: January 6, 2021          **THE JUSTICE X LAW GROUP**

By: _____
HUMBERTO GUIZAR
AUSTIN R. DOVE
STEPHEN A. KING
CHRISTIAN CONTRERAS
*Attorneys for Plaintiffs.*

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: January 6, 2021                    **THE JUSTICE X LAW GROUP**

By: _____
HUMBERTO GUIZAR
AUSTIN R. DOVE
STEPHEN A. KING
CHRISTIAN CONTRERAS
*Attorneys for Plaintiffs.*

35

**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**