1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  SARA OCHOA, BRANDEN COSTA,          Case No. 2:20-CV-06963-AB (AGRx)
12  JAJUAN JOHNSON, ANTONIO
    MAY, and MICHAEL PERR, KIVON
13  WILLIAMS, GADSEEL QUINONEZ,
    and JOSE QUINONEZ, individually
14  and on behalf of a class similarly
    situated persons,                   **ORDER GRANTING IN PART**
15                                       **OFFICER DEFENDANTS' MOTION**
                      Plaintiffs,        **TO DISMISS**
16
    v.
17

18
    CITY OF LOS ANGELES, a legal
19  subdivision of the State of California;
20  BRAXSTON SHAW; MICHAEL
    COBLENTZ; NICOLAS MARTINEZ;
21  and DOES 1 through 10, inclusive,
22
                      Defendants.
23

24
25
26
27
28
                              1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Before the Court is Defendants Braxston Shaw, Michael Coblentz, and Nicolas Martinez's (collectively "Officer Defendants") Motion to Dismiss, or in the alternative Stay the Proceedings as to Plaintiffs' Second Amended Class Action Complaint ("Motion").  (Dkt. No. 47.)  Plaintiffs Sara Ochoa, Branden Costa, JaJuan Johnson, Antonio May, Michael Perr, Kivon Williams, Gadseel Quinonez, and Jose Quinonez (collectively "Plaintiffs") filed an opposition ("Opp'n").  (Dkt. No. 50.) Officer Defendants filed a reply ("Reply").  (Dkt. No. 51.)  The Court heard oral argument regarding the Officer Defendants' Motion on October 29, 2021.  For the reasons stated above, the Court **STAYS** this case pending the criminal cases against the Officer Defendants, and the motion to dismiss is **DENIED** as moot, without prejudice.

## I.   BACKGROUND

On January 6, 2021, Plaintiffs filed their Second Amended Complaint ("SAC"), the operative complaint.  (Dkt. No. 22, "SAC.")  The SAC asserts the following causes of action: (1) Fourth Amendment violations (42 U.S.C. § 1983); (2) Fourteenth Amendment violations – Substantive Due Process (42 U.S.C. § 1983); (3) First Amendment violations (42 U.S.C. § 1983); (4) Fourteenth Amendment violations – Equal Protection (42 U.S.C. § 1983); (5) Municipal Liability (*Monell*) (42 U.S.C. § 1983); (6) Tom Bane Act violations (Civil Code § 52.1); (7) Negligence; (8) Defamation; (9) Torts in Essence; and (10) Injunctive Relief.  (*Id.*)  Plaintiffs assert these claims against the City of Los Angeles and the three Officer Defendants.  (*Id.*)

Plaintiffs are suing on behalf of themselves and a class of similarly situated individuals throughout Los Angeles who have been "victims of [Los Angeles Police Department ("LAPD")] officers who filed fraudulent reports, lied under oath, and abused [the CalGangs] database systems and whose actions were condoned, approved and ratified by the LAPD. . . . ."  (*Id.* at ¶ 42.)  Plaintiffs seek damages, injunctive relief, an order requiring the LAPD "to purge any and all gang databases or similar

2.

records of the false information concerning Plaintiffs and the members of the putative class," publicly clearing their names, and "taking all reasonable and necessary actions to prevent these abuses from occurring, including enjoining LAPD officers from making gang identifications during field interviews and other encounters." (*Id.* at ¶ 8.)

## A. CalGangs Database and the Criminal Case

The SAC alleges that "CalGangs is [a database] used by law enforcement agencies across the state of California to store the names and personal details of nearly eighty thousand (80,000) people suspected of being active gang members or possibly associating with [active gang members]." (SAC ¶ 35.)  The LAPD records account for about "25% of all CalGangs entries." (*Id.* at 32.)  In June 2020, "the California Department of Justice announced it was suspending the use of CalGangs, citing questions about its accuracy and the desire to 'avoid any adverse impact on individuals, particularly in communities of color.'" (*Id.* at ¶ 35.)

During oral argument, counsel for Defendants stated that once an individual is added to the database, they are notified of their inclusion in the database pursuant to California Penal Code § 186.34.  In response, Plaintiffs asserted that several individuals included in the database are unaware of their inclusion because of they never received the required notice.

On July 10, 2020, "an LAPD memorandum confirmed that a total of twenty-four (24) LAPD officers are under investigation for falsifying police reports and misclassifying civilians as gang members or gang associates." (*Id.* at ¶ 35.)

On July 14, 2020, the California Department of Justice revoked LAPD's access to the CalGangs database. (*Id.* at ¶ 33.)

On July 9, 2020, the Los Angeles County District Attorney's Office filed a criminal complaint asserting fifty-nine counts against the Officer Defendants. (*Id.* at ¶ 34.)  "The criminal complaint accuses [the Officer Defendants] of conspiring to file false police reports, fabrication of false court documents, falsification of [field

3.

interview ("FI")] cards, and the fabrication of non-existent people as gang members." (*Id.* at ¶ 34.)  The criminal complaint names three of the named Plaintiffs in this civil action, Gadseel Quinonez, Jose Quinonez, and Kivon Williams, as victims of the Officer Defendants.  (*Id.*)  As of the date of this Order, the criminal case against the Officer Defendants has not been set for trial, but a preliminary hearing is scheduled for January 14, 2022.  During oral argument, counsel for Defendants noted that the criminal case is expected to be set for trial in the first or second quarter of 2022.

### B. **The Named Plaintiffs**

As to the named Plaintiffs, the SAC asserts the following interactions with LAPD officers, including the Officer Defendants, and their inclusion in the CalGangs database.  Notably, the SAC does not include any specific allegations as to Plaintiff Antonio May and Plaintiff Michael Perr.  (*See generally* SAC.)

#### i. *Plaintiffs Gadseel Quinonez and Jose Quinonez*

Plaintiffs Gadseel Quinonez and Jose Quinonez are "brothers who live [and work] in South Los Angeles, California," which is an area "patrolled by the Metropolitan Division of the [LAPD]."  (SAC at ¶ 3.)  Plaintiffs are "young Latino men," whom Officer Shaw and Officer Martinez, in or around 2018, "wrote an FI card falsely documenting [them] as MS-13 gang members."  (*Id.*)  The SAC does not assert any additional allegations as to Plaintiffs Gadseel Quinonez and Jose Quinonez.

#### ii. *Plaintiff Sara Ochoa*

Plaintiff Sara Ochoa is a "young Latina woman from East Los Angeles."  (SAC at ¶ 4.)  Ms. Ochoa was a California correctional officer until "she became a victim of LAPD officers on January 18, 2020 when Ms. Ochoa was misclassified as a 'gang associate' simply for going back to visit her childhood neighborhood."  (*Id.*)  Ms. Ochoa was also "subjected to an unreasonable detention by being handcuffed on the street in public display for approximately twenty (20) minutes while her vehicle and belongings in her vehicle were ransacked by LAPD officers."  (*Id.*)

///

4.

1           *iii.   Plaintiff JaJuan Johnson*

2       On January 13, 2019, Plaintiff JaJuan Johnson, a recent high school graduate

3    with no criminal record, "was a passenger in a car being driven in Los Angeles when

4    LAPD officers pulled over the vehicle, ostensibly for tinted windows." (SAC at ¶ 5.)

5    According to the SAC, the officers "concocted a pretense to search the car, and then

6    blatantly lied in the police report they authored by contending that [Mr. Johnson] was

7    a member of a Blood street gang" because Mr. Johnson's cousin was an alleged gang

8    member. (*Id.*) "As a result, Mr. Johnson is currently being prosecuted by the Los

9    Angeles City Attorney's Office pursuant to a fabricated gang allegation under Penal

10   Code Section 186.22," which has caused a loss of employment to Mr. Johnson and

11   harm to "his reputation and severe depression." (*Id.*) Although Mr. Johnson has

12   "consistently denied any gang membership, "[i]f convicted, Mr. Johnson will be

13   required to register as a gang member." (*Id.*)

14          *iv.   Plaintiff Branden Costa*

15      Plaintiff Branden Costa, a young Black man and a recent high school graduate,

16   "was returning home from visiting a friend at the California Hospital in Downtown

17   Los Angeles" when "LAPD officers falsely accused Mr. Costa of being the shooter" at

18   a shooting that occurred at a park approximately twenty minutes from the hospital.

19   (SAC at ¶ 6.) However, the "[t]ime-verified security footage from the hospital

20   showed Mr. Costa exiting the lobby ten minutes before the shooting." (*Id.*)

21   According to the SAC, "[i]n an effort to unlawfully convict Mr. Costa, LAPD officers

22   prepared and submitted false police reports claiming Mr. Costa was a gang member,

23   even though LAPD officers had no credible evidence to support this claim." (*Id.*)

24   Indeed, "Mr. Costa expressly told LAPD officers he was not a gang member." (*Id.*)

25   Mr. Costa was ultimately acquitted of all charges, but continues to suffer based on the

26   "falsely contrived gang identification." (*Id.*)

27          *v.   Plaintiff Kivon Williams*

28      Plaintiff Kivon Williams is a "young Black man who lives in South Los

                  5.

Angeles." (SAC at ¶ 37.)  In or around 2018, Officer Shaw and Officer Coblentz "wrote an FI card falsely document [Plaintiff Williams] as a '77 Swan' gang member." (*Id.*)  The FI card falsely stated that Plaintiff was known by the moniker of "Dub Bird" and had the two gang-related tattoos on his neck (*i.e.*, "Swan's" and "77"). (*Id.*)  The SAC does not assert any additional allegations as to Plaintiff Williams.

## II.   LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "A trial court may ... enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  However, "[t]he Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995).  "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Id.* (quoting *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980)) (alterations in original).

The decision whether to grant a stay is committed to the sound discretion of the district court and where, as here, the inquiry involves deciding whether to stay civil proceedings in the face of a related criminal action, the inquiry "should be made 'in light of the particular circumstances and competing interests involved in the case,'" which will be affected by the granting or refusal to grant a stay. *Id.* (quoting *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  The Court should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a

delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Keating*, 45 F.3d at 324–25.

## III.   DISCUSSION

Defendants request a stay of the entire matter pending the outcome of the pending criminal case against the Officer Defendants.  Specifically, Defendants assert that the stay is necessary because the Officer Defendants' Fifth Amendment rights are implicated by the parallel criminal case involving the same legal issues and factual allegations.  Moreover, the Officer Defendants assert the stay would not prejudice Plaintiffs as the criminal case is expected to proceed to trial in 2022 and the civil case is still in the early stages of litigation.  (*See* Motion at 19:11-20:9; *see also* Reply at 12:1-13:5.)  During oral argument, Plaintiffs confirmed they would be agreeable to a partial stay, but not to a complete stay of the matter.  Specifically, Plaintiffs are agreeable to staying the matter as to the Officer Defendants that are currently named in the criminal case, including discovery-related to these Officers, but do not agree to the stay the matters as to Defendant City of Los Angeles.  Plaintiffs explained that a limited stay would allow them to proceed with receiving information regarding other putative class members that is necessary for their investigation[1] and possible settlement discussions.

The Court has considered the *Keating* factors and finds that in totality, these factors weigh in favor of granting a stay of the entire matter pending the resolution of the related and parallel criminal case involving the Officer Defendants.

///

---

[1] Indeed, the parties have a pending motion seeking a protective order based on Plaintiffs' request for information regarding putative class members before the Magistrate Judge.  (*See* Dkt. No. 38.)

1

## A. **Plaintiffs' Interest and Potential Prejudice**

2    Plaintiffs claim delay as the primary prejudice because there is no set trial date

3    in the criminal case and there are inherent risks as to the availability of witnesses and

4    evidence.  (*See* Opp'n at 20:21-21:3.)  Although Plaintiffs undoubtedly have an

5    interest in the prompt resolution of their case, the Court does not find that a stay

6    would unduly prejudice Plaintiffs nor would Plaintiffs' interest in having the matter

7    expeditiously litigated be substantially implicated under the present circumstances.

8    First, as confirmed by the Officer Defendants during oral argument, the stay would

9    not be indefinite as the trial is expected to commence in 2022.  Second, because the

10   subject matter of the criminal case and this civil action is closely related, which

11   Plaintiffs do not dispute, the relevant evidence will be preserved through the criminal

12   case.  (*Compare,* Dkt. 47, RJN Ex. A, *with* SAC.)  Third, the civil action has not

13   significantly progressed as demonstrated by Defendants' Motion to Dismiss the SAC

14   and the parties still being engaged in non-expert discovery, which is not set to close

15   until March 4, 2022.  (Dkt. No. 27.)  Last, a stay may align with Plaintiffs' interests as

16   the resolution of the criminal case may assist in streamlining the claims, discovery,

17   and potential privilege issues in this matter.  Accordingly, this factor does not weigh

18   against the implementation of a stay.

19

## B. **Officer Defendants' Fifth Amendment Rights**

20   When deciding whether to grant a stay of civil proceedings, the Court must

21   consider "the extent to which the defendant's [F]ifth [A]mendment rights are

22   implicated." *Keating*, 45 F.3d at 324 (citation and internal quotations omitted).  A

23   stay is warranted where a grand jury returns a criminal indictment and where there is a

24   large degree of overlap between the facts involved in both cases. *See S.E.C. v.*

25   *Dresser Indus., Inc.*, 628 F.2d at 1375-76 ("[T]he strongest case for deferring civil

26   proceedings until after completion of criminal proceedings is where a party under

27   indictment for a serious offense is required to defend a civil or administrative action

28   involving the same matter.").

8.

1       Here, the Los Angeles County District Attorney's Office filed a criminal

2  complaint asserting fifty-nine counts against the Officer Defendants accusing them of

3  "conspiring to file false police reports, fabrication of false court documents,

4  falsification of [field interview ("FI")] cards, and the fabrication of non-existent

5  people as gang members." (SAC at ¶ 34.) It is undisputable that the Officer

6  Defendants have been indicted for serious offenses.

7       Furthermore, neither party disputes that the subject matter of the criminal case

8  and this civil action are based on the same legal issues and factual allegations.

9  (*Compare,* Dkt. 47, RJN Ex. A, *with* SAC.) Indeed, the criminal complaint names

10  three of the named Plaintiffs in this instant action as victims of the Officer

11  Defendants. (*See* Dkt. 47, RJN Ex. A.) Because the Officer Defendants have been

12  indicted for a serious offense involving the same subject matter as this civil action, the

13  Court is unpersuaded that Plaintiffs' proposed limited stay is possible or efficient. For

14  example, it is entirely unclear how the Court would be able to carve-out the Officer

15  Defendants from the civil litigation when the SAC is premised upon the Officer

16  Defendants' indictment (*see* SAC at ¶¶ 1, 42, 63-64) and the majority of the

17  allegations in the SAC are asserted against these Officer Defendants (*see* SAC at ¶ 2,

18  37, 36 ). If the civil matter were to proceed simultaneously as the criminal matter, the

19  Officer Defendants would have to choice between waiving their rights against self-

20  incrimination and potentially exposing themselves to criminal liability, or asserting

21  their rights against self-incrimination and "thereby inviting prejudice in the civil

22  case." *Wroth v. City of Rohnert Park*, No. 17-CV-05339-JST, 2018 WL 888466, at *2

23  (N.D. Cal. Feb. 14, 2018) (quoting *Jones v. Conte*, No. C045312S1, 2005 WL

24  1287017, at *1 (N.D. Apr. 19, 2005)). "If the [Officer Defendants] exercise their Fifth

25  Amendment rights, this may be used against them as 'the Fifth Amendment does not

26  forbid adverse inferences against parties to civil actions....'" *Id.* (quoting *Baxter v.*

27  *Palmigiano*, 425 U.S. 308, 318 (1976)).

28       Accordingly, because there is a pending criminal case against the Officer

Defendants that revolves and focuses on the exact same facts as this civil matter, this factor significantly weighs in favor of granting the stay. *See eBay, Inc. v. Digital Point Sols., Inc.*, No. C 08-4052 JF (PVT), 2010 WL 702463, at *3 (N.D. Cal. Feb. 25, 2010) ("When simultaneous civil and criminal proceedings involve the same or closely related facts, the Fifth Amendment concerns may be sufficient to warrant a stay.") (internal quotation marks omitted).

### C. Judicial Efficiency

Here, neither party disputes that the criminal case and the civil matter focus on the same legal issues and factual allegations. If a stay is not implemented, then both the state court and this Court would have to simultaneously reach factual and legal findings as to the Officer Defendants' liability. This duplicative usage of resources in two different forums is inefficient and could possibly result in conflicting rulings. Moreover, it is likely that the resolution of the criminal case will clarify and delimitate the claims and issues in this case. Accordingly, considerations of judicial economy weigh in favor of granting the stay.

### D. Interests of Non-Parties and the Public

Plaintiffs assert that non-parties and the public have an interest in the civil action because of the Defendants' unconstitutional custom and practice of misidentifying individuals as gang members or gang associates, which has affected "hundreds, if not thousands" of individuals. (Opp'n at 22:10-11.) In response, Defendants argue that the public has an overriding interest in preserving the integrity of the criminal prosecution and any non-parties that have allegedly been affected can seek recourse through the California Penal Code § 186.34(e). The Court is persuaded by Defendants arguments.

Although the Court acknowledges that non-parties and the public have a strong interest in the prosecution of the civil matter since it involves officer activities that appear to have serious consequences to individuals affected, this interest is overridden by the non-parties and public's interest in the criminal prosecution of the Officer

Defendants.  Even a partial stay, as requested by Plaintiffs, could interfere with the progression and integrity of the criminal case as there is likely to be a great deal of overlap between the victims and witnesses in the criminal case and the civil case. Indeed, three of the named Plaintiffs here are three of the named victims in the criminal case.

Plaintiffs' concerns are also partially eased by the fact that on July 14, 2020, the California Department of Justice revoked LAPD's access to the CalGangs database. (*See* SAC at ¶ 33.)  In addition, while the criminal case is pending, potential victims may seek recourse through California Penal Code § 186.34(e), which allows a "person designated or to be designated as a suspected gang member, associate, or affiliate" to contest their designation by submitting written documentation to the local law enforcement agency.[2]  Accordingly, these two *Keating* factors weigh in favor of granting the stay.

In sum, the Court finds that Plaintiffs will not suffer significant prejudice if a stay is entered, and that the hardship to the Officer Defendants of not entering a stay is significant.

**IV.    CONCLUSION**

For the reasons stated above, the Court **STAYS** this case pending the criminal case against the Officer Defendants, and the motion to dismiss is **DENIED** as moot, without prejudice.  All upcoming dates and deadlines are **VACATED**.  Furthermore, the Parties are **ORDERED** to file a joint report on the status of the criminal case against the Officer Defendants commencing on January 17, 2021 and continuing every ninety (90) days thereafter, and within ten (10) days of the criminal case being

---

[2] In their Motion to Dismiss, Defendants assert that Plaintiffs failed to exhaust their administrative remedies before filing this civil matter because they did not request to be removed from the database pursuant to California Penal Code § 186.34(e).  Because the civil matter is being stayed in its entirety pending the criminal case, the Court makes no finding as to whether this argument is meritorious.

11.

1   resolved.  Any report upon the resolution of the criminal case must set forth the

2   Parties' position as to that case's impact on this matter and whether the stay should be

3   maintained or lifted.

4

5          **IT IS SO ORDERED.**

6   Dated: December 29, 2021          _____

7                                      HONORABLE ANDRÉ BIROTTE JR.
                                       UNITED STATES DISTRICT COURT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                       12.